UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MCLAREN INVESTMENT AND
RETIREMENT COMMITTEE, et al.,

        Plaintiffs,

v.                                     Case No.  1:08-CV-1178

LISA BOOTH WHITEHEAD and           HON. GORDON J. QUIST
DANIEL LUIS GIGNAC,

        Defendants.
_____/

## MEMORANDUM ORDER TO SHOW CAUSE

### BACKGROUND AND PROCEDURAL HISTORY

This is an interpleader action brought by McLaren Investment and Retirement Committee
(the "Committee"), as Administrator of the Ingham Regional Medical Center Retirement Plan
("Plan"), and JP Morgan Chase Bank, N.A., as Trustee of the Plan, pursuant Fed. R. Civ. P. 22 and
the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461.  As
support for subject matter jurisdiction, Plaintiffs alleged that "29 U.S.C. 1132(a)(3)(B)(ii) authorizes
fiduciaries such as Plaintiffs to bring civil actions for appropriate equitable relief, including
interpleader actions, and 29 U.S.C. § 1132(e) provides for federal subject matter jurisdiction over
such actions.  *Metropolitan Life Insurance Company v. Marsh*, 119 F.3d 415 (6th Cir. 1997)."
(Compl. ¶ 2.)  Plaintiffs named Lisa Booth Whitehead ("Whitehead") and Daniel Luis Gignac
("Gignac"), claimants to the death benefits of Nancy J. Fitzgerald, a deceased participant of the Plan,
as Defendants.

The Plan is an ERISA employee benefit plan maintained by Ingham Regional Medical Center. Fitzgerald was an employee of Ingham Regional Medical Center and its predecessor, Michigan Capital Healthcare, from 1978 to 1997, and a participant in the Plan. Fitzgerald died in May 2008.

During her lifetime, Fitzgerald adopted two sons, Anthony E. Gignac (now known as Khalid Bin al-Saud), and Defendant Daniel Luis Gignac. Fitzgerald was previously married to James E. Gignac, but they divorced in 1982. In approximately 1995, Fitzgerald and Whitehead, also employed by Ingham Regional Medical Center, became life partners and began maintaining a household together. After Fitzgerald died, Whitehead was appointed Personal Representative of Fitzgerald's estate.

Gignac and Whitehead both made claims for the death benefits for Fitzgerald's interest under the Plan.[1] Section 8.2 of the Plan, which addresses the procedure for a participant's designation of beneficiary, provides in relevant part:

> If no Beneficiary designation *has been made* . . . the Participant is deemed to have designated the following as the Participant's Beneficiaries and contingent Beneficiaries, with priority in the order named:
>
> (a)     The Participant's spouse.
>
> (b)     The Participant's descendants by right of representation.
>
> (c)     The Participant's estate.

(Plan § 8.2 (italics added).) Plaintiffs found no beneficiary designation on file for Fitzgerald. Gignac claimed that he is entitled to Fitzgerald's interest pursuant to § 8.2(b) of the Plan. Whitehead, on the other hand, claimed that she was entitled to Fitzgerald's interest because

---

[1] Anthony Gignac allegedly waived any claim to the death benefits that he may have had. It appears that Fitzgerald's parental rights to Anthony Gignac were previously terminated.

Whitehead and Fitzgerald had each completed and submitted beneficiary designations designating each other as beneficiary for their respective retirement benefits under the Plan. Faced with competing claims and the potential for multiple liability, the Plan elected not to decide the claims for benefits, but instead filed the instant action.

On February 24, 2009, pursuant to stipulation of the parties, the Court entered an Order dismissing Plaintiffs from the case and awarding Plaintiffs their costs and attorney fees. On March 11, 2009, the Court entered a Case Management Order which provided for a brief period of discovery followed by motions for summary judgment. The Case Management Order further provided that if the case was not resolved on the motions, the Court would schedule a final pretrial conference and a bench trial.

The parties completed discovery and have now filed motions for summary judgment.[2] It is undisputed that the Committee has not found a beneficiary designation form on file for Fitzgerald. Gignac argues that he is entitled to summary judgment because § 8.2(b) of the Plan dictates that he is the designated beneficiary in the absence of a completed beneficiary designation form. Whitehead, on the other hand, contends that she is entitled to summary judgment because she and Fitzgerald submitted reciprocal beneficiary designations and the Plan or its representatives lost or misplaced both forms. Whitehead claims that she is entitled to summary judgment under the doctrine of substantial compliance because she and Fitzgerald did everything they were required to do in order to effectuate their intent to name each other as beneficiaries. She contends that she is entitled to summary judgment because Gignac has failed to present evidence contradicting her affidavit.

---

[2]Whitehead also filed a Third Party Complaint against McLaren Healthcare Corporation on May 20, 2009. However, the Court dismissed the Third Party Complaint on July 31, 2009, pursuant to stipulation of the parties.

The parties agree that the Plan is an ERISA plan and that ERISA governs the determination of this dispute. The Court finds no reason to conclude otherwise.

Because this action arises under ERISA, it implicates the principal of exhaustion of administrative remedies. Although ERISA does not specifically contain an exhaustion requirement, the Sixth Circuit has held that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979 (6th Cir. 1991) (citing 29 U.S.C. § 1133(2)). Exhaustion is excused "where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 n.4 (6th Cir. 1998). "The standard for adjudging futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* The Sixth Circuit has written that exhaustion of administrative remedies serves:

(1)     To help reduce the number of frivolous law-suits under ERISA.
(2)     To promote the consistent treatment of claims for benefits.
(3)     To provide a nonadversarial method of claims settlement.
(4)     To minimize the costs of claims settlement for all concerned.
(5)     To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.
(6)     To enhance the ability of trustees of benefit plans to correct their errors.
(7)     To enhance the ability of trustees of benefit plans to interpret plan provisions.
(8)     To help assemble a factual record which will assist a court in reviewing the fiduciaries' actions.

*Constantino v. TRW, Inc.* 13 F.3d 969, 975 (6th Cir. 1994).

This is not the typical denial of benefits case under ERISA where a participant or beneficiary seeks review of a plan fiduciary's denial of benefits. Here, the issue is which of two claimants is

entitled to benefits that are indisputably owing under an ERISA plan.  In the normal course of events, this is a decision that is reserved, in the first instance, to the plan administrator.  Rather than making a decision, however, the Committee punted:  it chose to leave it to this Court to figure out which of the two claimants is entitled to Fitzgerald's death benefits.  As the First Circuit has observed, when a plan administrator elects to avoid a decision in favor of filing an interpleader action, difficult and unnecessary issues arise regarding the district court's role.  *See Forcier v. Metro. Life Ins. Co.*, 469 F.3d 178, 183 (1st Cir. 2006).  In *Forcier*, the First Circuit wrote:  "The key question is whether, once MetLife bailed out of the proceedings without having made an initial benefits determination, the district court assumed the same discretion in the allocation of benefits that the policy conferred upon the insurer. While neither party raised the issue of exhaustion and the district court apparently overlooked it, the court of appeals observed that "had there been a timely objection, the [district] court might have found interpleader improper and directed that the case be returned to MetLife for an initial benefits determination."  *Id.* at 182.  Although not requiring exhaustion under the facts presented, the Third Circuit in *Metropolitan Life Insurance Co. v. Price*, 501 F.3d 271 (3d Cir. 2007), endorsed "reverse exhaustion" – requiring the plan administrator to make the initial determination – at least in limited circumstances in interpleader actions.  It observed that "[t]he sound judicial policy that animates the exhaustion doctrine applies with particular force when fiduciaries are exercising discretion granted by plan documents.  Courts review such decisions under the deferential arbitrary and capricious standard."  *Id.* at 281.  In fact, nothing precludes a plan administrator from deciding a claim and then filing an interpleader action.  *See Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 865 (8th Cir. 2006) (review of plan administrator's decision where the

plan administrator decided that one of the claimants was entitled to death benefits and then filed an interpleader action without deciding the losing claimant's appeal).

The Committee's failure to decide the matter deprived it of at least two of the benefits of exhaustion mentioned in *Constantino*, *supra*, namely, the opportunity to establish consistent treatment of claims for benefits and the opportunity to interpret plan provisions. While it is true that in *Metropolitan Life Insurance Co. v. Marsh*, 119 F.3d 415 (6th Cir. 1997), the Sixth Circuit authorized the use of interpleader actions by ERISA plan administrators in ERISA cases, *Marsh* did not consider whether or to what extent exhaustion should be required. More importantly, *Marsh* is distinguishable from this case because it involved an issue of statutory construction – whether the divorce decree at issue was a qualified domestic relations order outside of ERISA's preemption clause. In contrast, the dispute in this case requires the interpretation of the Plan – whether a participant may be considered to have made a beneficiary designation where no form is on file but a claimant alleges that the participant did make and submit a beneficiary designation form. Moreover, the resolution of this issue will likely require the decision-maker to consider and resolve conflicting evidence. For example, Whitehead states in her affidavit that she and Fitzgerald executed and filed reciprocal beneficiary designations. On the other hand, in her affidavit attached to McLaren Health Care Corporation's brief in opposition to Whitehead's motion for summary judgment, Kimberly Confer, a Retirement Services Coordinator in the Human Resources Department of Ingham Regional Medical Center from 1998 until 2008, states that "[b]ased upon [her] experience, routine, custom, and practice, and those of the Human Resources Department, if a Plan participant has executed and returned a beneficiary designation, it is on file and part of the records pertaining to the Plan participant." (Confer Aff. ¶ 3.)

The standard governing this Court's review of a determination by the Committee is a significant consideration in the Court's exhaustion analysis. A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). However, where the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the determination is reviewed under the "arbitrary and capricious" standard. *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991). The arbitrary and capricious standard "'is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)); *see also Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (noting that administrators' decisions "are not arbitrary and capricious if they are 'rational in light of the plan's provisions'") (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). As the Third Circuit noted in *Price*, exhaustion is particularly appropriate in interpleader cases where the plan administrator is granted discretion by the plan documents to decide claims and interpret the plan provisions. *Price*, 501 F.3d at 281. On the other hand, if the standard of review is *de novo*, exhaustion plays a less critical role.

At this point the Court is unable to determine whether the Plan vests the Committee with discretion to interpret Plan documents and/or determine eligibility for benefits because the parties

have submitted only limited excerpts of the Plan document.  The Court will thus require the parties to submit the entire Plan document and submit briefs addressing the applicable standard of review and whether the parties should be required to exhaust their claims with the Committee.  Therefore,

**IT IS HEREBY ORDERED** as follows:

1. Within **fourteen (14)** days of the date of this Order, the Defendants Whitehead and Gignac shall file a complete copy of the Plan document.

2. Within **twenty-one (21)** days of the date of this Order, Defendants shall show cause why the Court should not require the parties to exhaust their administrative remedies with the Committee and stay this case for a period of sixty (60) days while the parties exhaust their remedies.  Either party would then be permitted to return to this Court to seek review of the Committee's decision.

3. Defendants' responses shall also address the appropriate standard of review and be limited to five pages.

Dated:  August 28, 2009                                     _____/s/ Gordon J. Quist_____
                                                                              GORDON J. QUIST
                                                                              UNITED STATES DISTRICT JUDGE